IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

POWHATAN COUNTY SCHOOL BOARD

    Plaintiff,

v.                                            Civil Action No. 3:24cv216

KATHY B. HALVORSEN, et al.,
as Parents and Next Friends
of A.H.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANTS' [sic] HALVORSENS' MOTION TO DISMISS ("the Motion") (ECF No. 4). For the reasons set forth below, the Motion will be granted as to Count I, with leave to file an Amended Complaint, but the Motion will be denied as to Counts III and IV.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and its complimentary federal and state regulations, 34 C.F.R. Part 300 and 8 Va. Admin. Code 20-81-10 *et seq.* The Halvorsens are the parents of a thirteen-year-old, A.H., who is eligible to receive

---

[1] The facts are stated as they are set forth in the Complaint (ECF No. 1-2).

special education and related services as a student with a disability under the IDEA. Compl. ¶ 10.

Disputes have arisen between the Halvorsens and their Special Education Advocate, defendant Kandise Lucas, on one hand, and the Powhatan County School Board ("PCSB"), on the other, about the implementation of A.H.'s Individualized Education Program ("IEP") under the IDEA. Under the IDEA, any dispute about an IEP can be resolved in a so-called "due process hearing" wherein the school officials (and their lawyers) and the parents (by their layers or Special Education Advocate) may present evidence to an administrative hearing officer who thereafter receives briefs and issues a decision.

An IEP agreed upon on May 17, 2021 placed A.H. in public school. Compl. ¶ 14. On November 18, 2021, at the instance of PCSB, the defendants and PCSB met to propose amending A.H.'s IEP to place him in a private, special education school. Id. ¶ 12. Under the PCSB proposal, A.H. was to receive fifteen hours per week of home-based instruction until he was placed in a private school. Id. However, under 8 Va. Admin. Code 20-81-170(E)(1)(d), PCSB could not implement the new IEP without written parental consent from the Halvorsens. Id. The Halvorsens objected to parts of the amended IEP and did not provide written consent.

On February 28, 2022, the Halvorsens, represented by Lucas, initiated their first due process hearing pursuant to 8 Va. Admin.

2

Code 20-81-210(A), asserting that they had given consent and demanding A.H.'s placement in private school of their selection. Compl. ¶ 13. In particular, on March 13, 2021, the Halvorsens and Lucas emailed to PCSB a copy of the November 18, 2021 IEP, purportedly providing their consent and signatures, but with numerous handwritten modifications and conditions (such as consenting only to A.H.'s placement in one specific private school that was different than the one proposed by PCSB.[2] Compl. ¶ 15. On May 13, 2022, a Hearing Officer ruled in favor of PCSB, finding that "the parents ha[d] not provided clear consent to any part of the November 18, 2021 IEP Amendment. Therefore, PCSB could not implement [it]." Compl. ¶ 14; ECF No. 7-13 at 13.

The Halvorsens could have appealed that decision, but they did not. Instead, the Halvorsens, represented by Lucas, filed nine more due process hearing requests based on the same operative body of facts as the initial February 28, 2022 due process hearing request. Compl. ¶ 17. A September 11, 2022 Hearing Officer's decision resolved due process hearings two, four, and six in favor of PCSB by finding that "[PCBS's] request for the parents to sign the . . . consent form [was] reasonable. . . . [A]ny delay in the implementation of the . . . placement has been caused by the

---

[2] The selection of the child's educational environment is an administrative decision. See Barnett ex rel. Barnett v. Fairfax Cnty. Sch. Bd., 927 F.2d 146, 153 (4th Cir. 1991).

3

parents' uncooperativeness . . . . The delay in implementation of the . . . placement has not been caused by [PCSB]." ECF No. 7-14 at 22.³ Two separate hearing decisions disposed of due process hearings three and five on June 28, 2022 and July 19, 2022, respectively. Id. at 1 n.1. A September 12, 2022 Hearing Officer's decision resolved due process hearing seven, largely on grounds of res judicata, based on the September 11, 2022 decision. Compl. ¶ 19; ECF No. 7-15 at 5. There, as in the September 11, 2022 decision, the Hearing Officer found that "any delay in placement was caused by the parents, not [PCSB]." Compl. ¶ 19; ECF No. 7-15 at 3.

On November 10, 2023, the Halvorsens, again represented by Lucas, filed the eighth due process hearing request, alleging the same operative facts and seeking substantially the same relief as had been presented in the preceding seven requests for due process hearings. Compl. ¶ 22; ECF No. 7-9. In a decision dated January 3, 2024, the Hearing Officer found for PCSB on twenty of twenty issues presented in the Halvorsens' request. Compl. ¶ 22; ECF No. 7-11.

---

³ The Complaint erroneously claims that "a decision dated August 25, 2022 . . . resolved due process hearing requests 2, 3, 4, 5, and 6 . . . ." Compl. ¶ 18. It cites Ex. 13 to the Complaint, filed in this case as ECF No. 7-14. ECF No. 7-14 is, in fact, a decision dated September 11, 2022 (respecting a hearing that occurred August 24-25, 2022), which explicitly says that it resolves requests two, four, and six. ECF No. 7-14 at 1. In a footnote, though, that decision refers to two other hearing decisions, apparently not included in the record, disposing of requests three and five on June 28, 2022 and July 19, 2022, respectively. ECF No. 7-14 at 1 n.1.

4

The Hearing Officer disposed of most proposed issues on res judicata and/or collateral estoppel grounds, and, on others, found that the requested relief was beyond the Hearing Officer's jurisdiction or capability. See generally ECF No. 7-11. On Proposed Issue Eight, "[w]hether Respondent failed to properly monitor the [s]tudent's progress while he [was] at [school]," the Hearing Officer first found that the issue was barred by res judicata, but went on to find that:

> Nevertheless, the LEA is obligated to comply with the requirements of 8 [Va. Admin. Code] 20-81-150 Private school placement [sic]. Section C addresses parentally placed private school children with disabilities. The LEA's obligations include, for example, developing a service plan, consult[ing] with private school representatives and representatives of the parents during the design and development of special education and related services, [and] ensur[ing] services provided meet the same standards as personnel providing services in public schools, transportation, procedural safeguards, etc. The LEA is ordered to comply with the requirements of 8 [Va. Admin. Code] 20-81-150.

Id. at 11 (emphasis added). The record suggests that this holding was based on the Hearing Officer's conclusion that, on the record before him, it was unknown whether PCSB was complying with these requirements; and, for that reason, it appears that the Hearing Officer ordered PCSB "to comply with the requirements of 8 [Va. Admin. Code] 20-81-150" id. at 14, while at the same time

5

dismissing Proposed Issue Eight, and the rest of the eighth hearing request in all other respects.

Then, on January 26, 2024, the Halvorsens, represented by Lucas, filed a ninth due process hearing request. Compl. ¶ 24. According to PCSB, that hearing request has since been dismissed too.[4] The Halvorsens, represented by Lucas, filed a tenth complaint since then, but it was dismissed, on March 22, 2024. ECF No. 6 at 1 n.1.

On March 1, 2024, PCSB filed, in the Circuit Court of Powhatan County, a Complaint against defendants John Halverson, Kathy Halvorsen, and Kandise Lucas. COMPLAINT AND REQUEST FOR INJUNCTION AND ATTORNEYS' FEES ("Complaint") (ECF No. 1-2). The Complaint sought: relief from the January 3, 2024 Hearing Officer's decision, pursuant to Va. Code § 22.1-214(D), ordering PCSB to "comply with 8 [Va. Admin. Code] 20-81-150" even though the Hearing Officer found in favor of PCSB on all factual issues (Count I); a preliminary injunction pausing a ninth, then-pending due process hearing request initiated by the defendants (Count II);[5] a

---

[4] That prompted PCSB to voluntarily dismiss Count II in this case, which sought the preliminary injunction to pause the proceedings in request number nine. RESPONSE IN OPPOSITION TO THE HALVORSENS' MOTION TO DISMISS (ECF No. 6) at 1 n.1; NOTICE OF VOLUNTARY DISMISSAL OF COUNT II (ECF No. 5).

[5] Count II was voluntarily dismissed because, after the Complaint was filed, the ninth hearing request was dismissed. NOTICE OF VOLUNTARY DISMISSAL OF COUNT II (ECF No. 5).

prefiling injunction against the filing of any future due process hearing requests (Count III); and an award of attorneys' fees for defending the previous due process hearings that the defendants had brought because those proceedings were frivolous (Count IV). Compl. ¶¶ 27-45.

On March 22, 2024, Kathy and John Halvorsen,[6] as parents and next friends of A.H., filed a NOTICE OF REMOVAL (ECF No. 1), removing this case from the Circuit Court for Powhatan County, Virginia to this Court, alleging subject matter jurisdiction under 28 U.S.C. §§ 1331, 1441, and 1446. Thereafter, the Halvorsens filed the Motion.

## DISCUSSION

### I.   COUNT I

The Halvorsens seek dismissal of Count I because it:

> Provide[s] <u>no factual support for the legal conclusion</u> the Hearing Officer's ruling that the Defendant comply with 8 V AC 20-81-1 was not regularly made because there were no allegations made as to what evidence was properly before the Hearing Officer; or that the Hearing Officer failed to conduct a proper hearing where all parties were allowed to present evidence and make arguments. Indeed, the Complaints <u>fails to establish any of the factual issues that were before the Hearing Officer</u> which resulted in his ruling being erroneous or based upon an accurate application of law to fact.

---

[6] There is a third defendant, Kandise Lucas, who is not represented by counsel for the Halvorsens and is not a party to the Motion, but who agreed to removal. ECF No. 1 ¶ 4.

7

DEFENDANTS' HALVORSENS' BRIEF IN SUPPORT OF MOTION TO DISMISS (ECF No. 8, p. 3) (emphasis added).

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (cleaned up). The Court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). So, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A motion to dismiss should only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated on other grounds by Twombly, 550 U.S. at 570. But, "[a]lthough for the purposes of [a] motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

8

statements . . ." are not sufficient to survive a motion to dismiss under Rule 12(b)(6). Ashcroft, 556 U.S. at 678. "Nevertheless, neither vagueness nor lack of detail is a sufficient ground on which to grant a motion to dismiss." Gray v. Metts, 203 F. Supp. 2d 426, 428 (D. Md. 2002).

The Halvorsens rely on the pleading standard set by Twombly and Iqbal, even though neither decision is cited in the Motion. Federal Rule of Civil Procedure 81(c) provides that the federal "rules apply to a civil action after it is removed from a state court." And, "[a]fter removal, repleading is unnecessary unless the court orders it." Fed. R. Civ. P. 81(c)(2). And, it is therefore the federal standards of pleading that are to be applied to measure the legal sufficiency of a removed complaint. Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 438 (1974). So, if a removed complaint does not meet the Twombly and Iqbal standard, repleading is necessary.[7]

Count I is filed pursuant to Va. Code § 22.1-214(D) which provides:

> Any party aggrieved by the findings and decision made pursuant to [a grievance Hearing Officer's decision respecting IDEA accommodations for children] may, within 180 days of such findings and decision, bring a civil action in the circuit court for the

---

[7] Twiqbal Applies To Complaints Removed From State Court, Drug & Device Law, James W. Beck, Bexis, November 18, 2010. This blog provides an excellent discussion on the topic citing many thoughtful, authoritative decisions.

> jurisdiction in which the school division is located. In any such action, the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate.

(emphasis added). Thus, Va. Code § 22.1-214(D) creates a civil cause of action under Virginia law.[8] "[T]he proper standard for the . . . court is to determine, based on a preponderance of the evidence, whether the substance of the proposed individualized educational program is reasonably calculated to enable the child to receive educational benefits." School Bd. of Cnty. of York v. Nicely, 408 S.E.2d 545, 548-49 (Va. App. 1991). 8 Va. Admin. Code 20-81-150(C) governs "[p]arentally placed private school children with disabilities." Its provisions "apply to children with disabilities who are enrolled by their parent(s) in private schools." Id. That code section sets out several requirements and considerations that the school division must make and implement on a disabled child's behalf. See id.

In Count I, PCSB seeks relief from the Hearing Officer's January 3, 2024 finding, in Proposed Issue Eight of the Halvorsens' eighth due process hearing request, that PCSB must "comply with

---

[8] The IDEA provides a federal analogue, from which the Virginia law is derived: 20 U.S.C. § 1415(i)(2)(A). See Sanchez v. Arlington Cnty. Sch. Bd., 58 F.4th 130, 133 (4th Cir. 2023).

10

the requirements of 8 [Va. Admin. Code] 20-81-150," pursuant to the cause of action created by Va. Code § 22.1-214.[9] ECF No. 7-11 at 14. The Complaint alleges that "the Hearing Officer's factual findings and legal conclusions are unsupported by a preponderance of the evidence . . . ," "[t]he Hearing Officer's factual findings and legal conclusions with respect to [PCSB's] compliance with 8 [Va. Admin. Code] 20-81-150 are contrary to the law and evidence," and "[t]he Hearing Officer erroneously concluded that [PCSB] needs to comply with 8 [Va. Admin. Code] 20-81-150." Compl. ¶¶ 28-30. In the RELIEF REQUESTED portion of the Complaint, the plaintiff seeks, in part, that the Court "[f]ind that the provisions of 8 [Va. Admin. Code] 20-81-150 do not apply to [PCSB] in this matter at this time and/or that [PCSB] is not in violation of the provisions of 8 [Va. Admin. Code] 20-81-150." Id. p. 12. The Complaint also claims that, "[b]ecause Student has not yet been placed by [PCSB] in a private school placement from [PCSB], the provisions of 8 [Va. Admin. Code] 20-81-150 do not apply to [PCSB] in this matter." Id. ¶ 30. In the facts section of the Complaint, it is alleged that:

---

[9] The Court exercises supplemental jurisdiction over this state court claim because: (1) the Court has original jurisdiction over the IDEA under 28 U.S.C. § 1331; and (2) the state court claim is "so related to claims in the action within such [federal question] jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

11

> [A]fter finding in favor of [PCSB] on all issues the [H]earing [O]fficer directed [PCSB] to comply with 8 [Va. Admin. Code] 20-81-150. In <u>ordering [PCSB] to comply with [that section], the Hearing Officer made errors of facts and law</u>. The evidence and the laws governing the provision of special education services do not support the Hearing Officer's decision on Issue 8. The Hearing Officer committed error by failing to render a proper decision based on an accurate application of law to fact.

<u>Id.</u> ¶ 23 (emphasis added).

The allegations in Count I are not sufficient to survive a motion to dismiss under the <u>Iqbal/Twombly</u> standard because the Complaint does not present factual allegations by which the Court can measure the plausibility of Count I. Instead, Count I merely makes a claim based on a legal conclusion that the Hearing Officer made errors without explaining what those errors were. They are thus "threadbare recitals of the elements of a cause of action" that do not pass muster under Fed. R. Civ. P. 12(b)(6). <u>Iqbal</u>, 556 U.S. at 678. Count I will therefore be dismissed without prejudice to the filing of an amended complaint.[10]

---

[10] Furthermore, the claims that 8 Va. Admin. Code 20-81-150 do not apply to the defendants' situation at all, because PCSB has not placed A.H. in a private school, are mistaken. 8 Va. Admin. Code 20-81-150(C) explicitly applies to "<u>[p]arentally placed</u> private school children with disabilities." "The provisions of this section apply to children with disabilities who are <u>enrolled by their parent(s)</u> in private schools." <u>Id.</u> (emphasis added).

## II. Count III: Prefiling Injunction

In Count III, PCSB seeks a permanent, prefiling injunction against the filing of any more due process hearing requests without leave of Court. The Complaint does not limit the requested relief to additional hearings arising out of the same set of facts as on the previous ten requests, but, in its brief, PCSB does confine the request for prefiling injunction to due process hearings arising out of the same facts that frame the basis for the previously decided hearings.

The Halvorsens argue that Count III does not state a claim upon which relief can be granted because it does not allege the components of a proper claim for injunctive relief. In particular, they argue that:

> [T]he request for injunctive relief failed to allege that (1) irreparable injury in the absence of such an order; (2) that the threatened injury to the moving party outweighs the harm to the opposing party resulting from the order; (3) that the injunction is not adverse to the public interest; and (4) that the moving party has a substantial likelihood of success on the merits.

ECF No. 8, p. 3. As explained below, that is not the applicable test against which to measure the legal sufficiency of Count III.

In assessing whether to award a permanent--not preliminary-- prefiling injunction, "a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in

13

particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 818 (4th Cir. 2004). "Moreover, even if a judge, after weighing the relevant factors, properly determines that a litigant's abusive conduct merits a prefiling injunction, the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." Id.

The Cromer factors control whether the Court may, in its discretion, award a prefiling injunction: (1) the defendants' history of litigation, in particular whether they have filed vexatious, harassing, or duplicative lawsuits; (2) whether the defendants had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the defendants' filings; and (4) the adequacy of alternative sanctions. Cromer, 390 F.3d at 818.

First, Count III alleges that the defendants have a long history of repetitive and duplicative litigation in this matter. To date, they have filed or attempted to file at least ten due process hearing requests based on the same fact pattern and

14

situation. The Hearing Officers assigned to these have, after the first dismissal on the merits, dismissed the majority of them on res judicata/collateral estoppel grounds. Accordingly, the Court finds that the plaintiff has made a plausible showing of vexatious, harassing, or duplicative filings. Second, the plaintiffs have made a plausible showing of intent to harass. Kandise Lucas, who is a special advocate for, and thus is an agent of, the Halvorsens, has previously been found by this Court to have publicly stated an intent to harass a school board, by filing multiple due process hearing requests against that school board as a strategy to help her succeed in similar proceedings. See Henrico Cnty. Sch. Bd. v. Matthews, No. 3:18-cv-110, 2019 WL 4860936, at *8 (E.D. Va. Oct. 2, 2019) ("Lucas has, in fact, publicly stated that she purposefully devised and implemented that strategy to make matters difficult for the School Board and to cost the School Board money, so as to get her way and make the School Board do as she wanted.").[11] Third, the burden these have placed on PCSB is substantial. PCSB reports having spent at least $330,544.48 defending these due process requests alone. Compl. ¶ 44. Fourth, Count III alleges that no other sanctions are reasonably available to prevent this specific type of burden on the plaintiff.

---

[11] This finding was upheld on appeal. See Henrico Cnty. Sch. Bd. v. Lucas, 827 Fed. App'x 367 (4th Cir. 2020).

15

The Cromer prefiling injunction factors are therefore all plausibly alleged, and the plaintiff has presented a claim for relief that survives a motion to dismiss. The Halvorsens argue that PCSB has not pled the factors enumerated in Winter v. Nat. Res. Def. Couns., Inc., 55 U.S. 7 (2008). ECF No. 8 at 4. But that is the standard for a preliminary injunction, which only applied to now-dismissed Count II. The proper standard for assessing a prefiling injunction, as here, is set forth in Cromer.

The Motion will be denied as to Count III.

### III. Count IV: Attorneys' Fees Under the IDEA

In Count Four, PCSB seeks reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(i)(II) & (III). It is settled that "[t]he IDEA allows [prevailing parties] in state administrative proceedings challenging . . . individualized education programs to recover attorney's fees in federal court." Sanchez v. Arlington Cnty. Sch. Bd., 58 F.4th 130, 132 (4th Cir. 2023). 20 U.S.C. § 1415(i)(3)(B)(i) provides, in relevant part, that a court may award reasonable attorneys' fees:

> (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
> (III) to a prevailing State educational agency or local educational agency against the

16

> attorney of a parent, <u>or against the parent</u>, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

(emphasis added).

"A party need not prevail on all claims in order to be regarded as the prevailing party because enforceable, material final relief on any IDEA claim is sufficient to make one a prevailing party." <u>JP ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.</u>, 641 F. Supp. 2d 499, 509 (E.D. Va. 2009). "[A] party has 360 days from the date of the administrative decision to commence a fees action." <u>Sanchez</u>, 58 F.4th at 139-40.

PCSB is a prevailing party on multiple, if not all, of the grievance hearing requests because the Hearing Officer found in its favor on all proposed issues. Under 20 U.S.C. § 1415(i)(3)(B)(i)(III), PCSB can recover attorneys' fees because the Halvorsens are <u>parents</u> as set forth in that subsection. Because PCSB has sought fees under both subsections and is a prevailing state educational agency, it has stated a plausible claim for reasonable attorneys' fees under Rule 12(b)(6). Lucas is not an attorney (although she holds herself out as "a litigator"), but she clearly served as an agent and representative of the Halvorsens. Accordingly, she too may be liable under the applicable statute.

17

The Halvorsens arguments, that PCSB is not a prevailing party and that the fee calculations are too high, are misplaced. ECF No. 8 at 5; ECF No. 9 at 3-4. This is not, as the Halvorsens put it, an "appeal" of the due process hearing decision, but a separate claim seeking attorneys' fees incurred defending those due process hearing requests. And, as PCSB acknowledges, the fee calculation in the Complaint may be wrong.[12] ECF No. 6 at 9-10. But that is a merits issue for trial, not a ground for dismissal of the entire portion of the case that seeks attorneys' fees.

## CONCLUSION

For the reasons set forth above, DEFENDANTS' [sic] HALVORSEN'S MOTION TO DISMISS (ECF No. 4) will be granted as to Count I without prejudice and with leave to file an Amended Complaint as to Count I, and denied as to Counts III and IV.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 15, 2024

---

[12] Sanchez, 58 F.4th 130, is controlling on this issue. All parties would do well to familiarize themselves with the holding and reasoning of the Fourth Circuit in that case.